IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMIR HEKMATI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-1766C |
| | ) | (Judge Hertling) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

---

DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

---

BRIAN M. BOYNTON
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Deputy Director

SHARI A. ROSE
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-1265
Facsimile: (202) 514-8640
E-mail: Shari.Rose@usdoj.gov

March 3, 2021                    *Attorneys for Defendant*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

QUESTIONS PRESENTED ...................................................................................3

STATEMENT OF THE CASE................................................................................4

    I.      Legal Background ............................................................................4

          A.     The Justice for United States Victims of State Sponsored Terrorism Act........4

          B.     Eligibility Requirements And Application Procedures....................................6

    II.    Factual Background .........................................................................7

          A.     Mr. Hekmati's Default Judgment Against Iran And Application For Compensation From The Fund ...............................................................7

          B.     The Special Master's Initial Eligibility Determination And Subsequent Correspondence Relating To Mr. Hekmati's Claim ...........................................8

          C.     The Special Master's Decision On Reconsideration .........................................9

          D.     The Hearing Proceedings Before The Special Master....................................11

          E.     The Special Master's Final Decision ..............................................................12

ARGUMENT .......................................................................................................14

    I.      Standards Of Review ....................................................................14

          A.     Standard For A Motion To Dismiss For Lack Of Subject Matter Jurisdiction....................................................................................................14

          B.     Standard For A Motion To Dismiss For Failure To State A Claim................15

          C.     Standard For A Motion For Summary Judgment ............................................15

    II.    The Court Lacks Jurisdiction Over Mr. Hekmati's Claims .........................16

          A.     The Jurisdiction Of This Court Is Limited......................................................16

          B.     The Act Expressly Precludes Judicial Review Of The Special Master's Decisions With Regard To Compensation From The Fund And Mr.

Hekmati Has Not Otherwise Raised A Claim Within This Court's Jurisdiction ..................................................................................17

III.   Assuming Jurisdiction, The Complaint Fails To State A Claim Of Statutory Violation Upon Which Relief May Be Granted ........................................................22

IV.   In The Alternative, The Court Should Grant Summary Judgment To The Government..................................................................................................................25

CONCLUSION...................................................................................................................25

TABLE OF AUTHORITIES

Cases                                                                                              Page(s)

*Abbott Labs. v. Cordis Corp.*,
   710 F.3d 1318 (Fed. Cir. 2013) ................................................................................... 19

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ........................................................................................... 17, 18

*Aetna Casualty & Surety Co. v. United States*,
   228 Ct. Cl. 146, 655 F.2d 1047 (1981) ...................................................................... 16

*Alberta Gas Chemicals, Ltd. v. Celanese Corp.*,
   650 F.2d 9 (2d Cir. 1981) ........................................................................................... 22

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................. 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 15

*Blaze Constr., Inc. v. United States*,
   27 Fed. Cl. 646 (1993) .............................................................................................. 15

*Block v. Community Nutrition Inst.*,
   467 U.S. 340 (1984) .................................................................................................. 17

*Eastport Steamship Corp. v. United States*,
   178 Ct. Cl. 599, 372 F.2d 1002 (1967) ...................................................................... 16

*Fidelity Construction Co. v. United States*,
   700 F.2d 1379 (Fed. Cir. 1983) ................................................................................. 16

*Fisher v. United States*,
   402 F.3d 1167 (Fed. Cir. 2005) ................................................................................. 17

*Folden v. United States*,
   379 F.3d 1344 (Fed. Cir. 2004) ................................................................................. 18

*Gould, Inc. v. United States*,
   935 F.2d 1271 (Fed. Cir. 1991) ................................................................................. 15

*Holley v. United States,*
  124 F.3d 1462 (Fed. Cir. 1997)................................................................ 14

*Indium Corp. of Am. v. Semi-Alloys, Inc.,*
  781 F.2d 879 (Fed. Cir. 1985).................................................................. 15

*Inter-Coastal Xpress, Inc. v. United States,*
  296 F.3d 1357 (Fed. Cir. 2002)................................................................ 16

*Kam-Almaz v. United States,*
  682 F.3d 1364 (Fed. Cir. 2012)................................................................ 15

*LeBlanc v. United States,*
  50 F.3d 1025 (Fed. Cir. 1995).................................................................. 19

*Lindsay v. United States,*
  295 F.3d 1252 (Fed. Cir. 2002)................................................................ 15

*Pueschel v. United States,*
  297 F.3d 1371 (Fed. Cir. 2002)................................................................ 18

*Rick's Mushroom Serv. v. United States,*
  521 F.3d 1338 (Fed. Cir. 2008)................................................................ 14

*Robinson v. United States,*
  135 Fed. Cl. 556 (2017) ........................................................................... 19

*Schneider v. Feinberg,*
  345 F.3d 135 (2d Cir. 2003)..................................................................... 18

*Tokyo Kikai Seisakusho, Ltd. v. United States,*
  529 F.3d 1352 (Fed. Cir. 2008)................................................... 22, 23, 24

*Trusted Integration, Inc. v. United States,*
  659 F.3d 1159 (Fed. Cir. 2011)................................................................ 14

*United States v. Babcock,*
  250 U.S. 328 (1919) ........................................................................... 17, 18

*United States v. Connolly,*
  716 F.2d 882 (Fed. Cir. 1983).................................................................. 16

*United States v. King,*
  395 U.S. 1 (1969) ..................................................................................... 16

*United States v. Mitchell,*
   445 U.S. 535 (1980) ............................................................................................... 16

*United States v. Sherwood,*
   312 U.S. 584 (1941) ............................................................................................... 16

*United States v. Testan*,
   424 U.S. 392 (1967) .......................................................................................... 16, 18

*Voge v. United States*,
   844 F.2d 776 (Fed. Cir. 1988) .............................................................................. 19

Statutes

28 U.S.C. § 1491 ...................................................................................................... 16, 19

34 U.S.C. § 20144 ................................................................................................... *passim*

Justice for United States Victims of State Sponsored Terrorism Clarification Act, No. 116-69,
   Pub. L. No. 116-69 (Nov. 21, 2019) ............................................................................ 4

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260 (Dec. 27, 2020) ................................ 4

Other Authorities

81 Fed. Reg. 45535 (July 14, 2016) .................................................................... 6, 7, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMIR HEKMATI,                          )
                                       )
                  Plaintiff,           )
                                       )
         v.                            )         No. 19-1766C
                                       )         (Judge Hertling)
THE UNITED STATES,                     )
                                       )
                  Defendant.           )

DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court

dismiss the first amended complaint filed by plaintiff, Amir Hekmati, on January 13, 2021, for

lack of subject matter jurisdiction.  Alternatively, we respectfully request that the Court grant us

summary judgment on all counts of the first amended complaint pursuant to RCFC 56.

INTRODUCTION

In 2015, Congress created the United States Victims of State Sponsored Terrorism Fund

(the Fund), which provides compensation to eligible claimants, including claimants who hold

judgments against state sponsors of terrorism.  *See* The Justice for United States Victims of State

Sponsored Terrorism Act, 34 U.S.C. § 20144 (the Act).  Congress directed the Attorney General

to appoint a Special Master who would administer the Fund with the assistance of the United

States Department of Justice.  Congress provided that the Special Master's decisions with regard

to compensation would not be subject to additional administrative or judicial review, except that,

where the Special Master denied a claimant's application in whole or in part, the claimant would

be able to request a hearing and the Special Master would, thereafter, issue a final,

nonreviewable decision.

Mr. Hekmati holds a final judgment against Iran based on his detention by the Iranian government between 2011 and 2016.  Mr. Hekmati applied to the Fund, and the Special Master initially determined that he was eligible to receive compensation.  Before Mr. Hekmati received any payment from the Fund, the Department of Justice asked the Special Master to reconsider his initial determination based on facts not previously before him.  Upon reconsideration, the Special Master determined that Mr. Hekmati is not eligible for compensation from the Fund because his application contained material omissions and false statements regarding Mr. Hekmati's reasons for traveling to Iran.  Following the decision on reconsideration, Mr. Hekmati was afforded a hearing before the Special Master.  In a final written decision, the Special Master confirmed his finding that, based on the totality of the evidence, Mr. Hekmati had made material omissions and false statements regarding his reasons for traveling to Iran, and the Special Master therefore affirmed his determination that Mr. Hekmati is not eligible for compensation from the Fund.

The Court lacks jurisdiction over Mr. Hekmati's amended complaint because the Act mandates that "[a]ll decisions made by the Special Master with regard to compensation from the Fund shall be . . . final" and "not subject to . . . . judicial review."  34 U.S.C. § 20144(b)(3)(B). Mr. Hekmati cannot evade this express bar on judicial review by characterizing his claim as an alleged statutory violation of the Act.  The purpose of Mr. Hekmati's claim is to challenge the Special Master's eligibility determination and obtain compensation from the Fund, and his claims are therefore precluded from judicial review.  In addition, this Court is without jurisdiction to entertain claims based on Mr. Hekmati's allegations of violations of due process, a violation of the separation of powers doctrine, and claims sounding in tort.

But even assuming jurisdiction, Mr. Hekmati's alleged statutory violation claim fails as a matter of law because it is based on a misconstruction of the Act.  According to Mr. Hekmati, the

Act forbids the Special Master from reconsidering his own determinations – *even when faced with evidence that the prior proceeding was tainted by fraud* – because it provides that the Special Master's decisions are not subject to administrative or judicial review. Reconsideration is not "review" however, but a reopening of a prior determination, and, as the United States Court of Appeals for the Federal Circuit has held, the power to reconsider is inherent in the power to decide. In precluding additional review of the Special Master's decisions by the agency and the courts, Congress did not forbid the Special Master from exercising his inherent authority to protect the proceedings before him from fraud. Accepting Mr. Hekmati's misreading of the statute would result in the untenable – and clearly not intended – outcome that a claimant could fraudulently obtain a decision of eligibility from the Special Master and that the United States would be compelled to provide compensation from the Fund pursuant to the fraudulently-obtained decision.

<u>QUESTIONS PRESENTED</u>

1.  Whether the Court lacks jurisdiction over Mr. Hekmati's claims because the express language of the Act precludes judicial review of the Special Master's decisions regarding compensation.

2.  Whether the Court lacks jurisdiction to entertain Mr. Hekmati's constitutional claims based on alleged violations of due process and the separation of powers doctrine.

3.  Whether the Court lacks jurisdiction to entertain Mr. Hekmati's claims sounding in tort.

4.  Whether Mr. Hekmati's alleged statutory violation claim should be dismissed because it is based on a misconstruction of the Act.

5.      Whether, in the alternative, the Government is entitled to summary judgment on

Mr. Hekmati's claims.

STATEMENT OF THE CASE

I.      Legal Background

        A.      The Justice for United States Victims of State Sponsored Terrorism Act

        The Justice for United States Victims of State Sponsored Terrorism Act, codified at 34

U.S.C. § 20144,[1] established the United States Victims of State Sponsored Terrorism Fund.  The

Fund provides compensation to eligible claimants who hold judgments against state sponsors of

terrorism, hostages held in the United States embassy in Iran from 1979 to 1981 and their

spouses and children, or the personal representative of such persons who are deceased.  34

U.S.C. § 20144(c).

        A Special Master, appointed by the Attorney General, administers compensation from the

Fund.  34 U.S.C. § 20144(b).  The Act provides that decisions of the Special Master with regard

to compensation are not subject to administrative or judicial review:

> (3) Decisions of the Special Master
>
> All decisions made by the Special Master with regard to
> compensation from the Fund shall be--
>
> (A) in writing and provided to the Attorney General, each claimant
> and, if applicable, the attorney for each claimant; and
>
> (B) final and, except as provided in paragraph (4), not subject to
> administrative or judicial review.
>
> (4) Review hearing

---

[1]  Formerly cited as 42 USCA § 10609 (2015).  The Act was amended, in ways not at issue here, by the Justice for United States Victims of State Sponsored Terrorism Clarification Act, Pub. L. No. 116-69, 133 Stat. 1134, div. B, title VII, § 1701(b)(1) (Nov. 21, 2019).  In addition, the Consolidated Appropriations Act, 2021, Pub. L. No. 116-260 (Dec. 27, 2020), extended the term of the Fund from 2030 to 2039.

(A) Not later than 30 days after receipt of a written decision by the Special Master, a claimant whose claim is denied in whole or in part by the Special Master may request a hearing before the Special Master pursuant to procedures established by the Special Master.

(B) Not later than 90 days after any such hearing, the Special Master shall issue a final written decision affirming or amending the original decision.  The written decision is final and nonreviewable.

34 U.S.C. § 20144(b)(3)-(4).  In addition, the Act directed the Special Master to "publish in the Federal Register and on a website maintained by the Department of Justice a notice specifying the procedures necessary for United States persons to apply and establish eligibility for payment" and provided that "[s]uch notice is not subject to the requirements of section 553 of Title 5."  34 U.S.C. § 20144(b)(2)(A).

As relevant here, in order to establish an eligible claim under the Act, the claimant must hold a final judgment issued by a United States district court under state or federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the Foreign Sovereign Immunities Act (FSIA). 34 U.S.C. § 20144(c)(2)(A).  For final judgments obtained after the publication of the notice in the Federal Register, the deadline for application submission is not later than 90 days after obtaining the final judgment.  34 U.S.C. § 20144(c)(3)(A)(ii).

The Act established funding for the Fund, including a one-time appropriation of $1.025 billion for the Fund in fiscal year 2017.  34 U.S.C. § 20144(e)(5).  In addition, the Act mandates that certain forfeiture proceeds, penalties, and fines (from civil and criminal matters involving prohibited transactions with state sponsors of terrorism) be deposited into the Fund if "forfeited or paid to the United States after" the date of the Act's enactment.  34 U.S.C. § 20144(e)(2). Under the Act, payments from the Fund are determined using compensatory judgment amounts

for judgment holders, and statutorily determined amounts for Iran hostages and their families.  34

U.S.C. § 20144(d).  The payments are made in *pro rata* distributions subject to statutory

limitations, including a cap of $20 million on an individual's eligible claim and consideration of

compensation claimants have already received from sources other than the Fund.  *Id.*  The Act

also provides that "in no event shall an individual who is criminally culpable for an act of

international terrorism receive any compensation under this section, either directly or on behalf

of a victim."  34 U.S.C. § 20144(h).

   B.  Eligibility Requirements And Application Procedures

  On May 17, 2016, the Attorney General initially appointed Kenneth R. Feinberg as the

Special Master to administer the Fund with the assistance of the Money Laundering and Asset

Recovery Section (MLARS), Criminal Division, United States Department of Justice (the

Department).  34 U.S.C. § 20144(b)(1)(A)-(B).  The Special Master published the required

notice in the Federal Register of the eligibility requirements and application procedures for

compensation under the Fund on July 14, 2016.  *See* Justice for United States Victims of State

Sponsored Terrorism Act, 81 Fed. Reg. 45535 (July 14, 2016) (Fund Procedures).[2]

  A claimant has the burden of establishing eligibility for payment by the Fund under the

Act.  Fund Procedures at 45537, Part III.  By submitting an application, a claimant acknowledges

and certifies the veracity of the application:

> The applicant certifies, under oath, subject to penalty of perjury or
> in a manner that meets the requirements of 28 U.S.C. 1746, that the
> information provided in the application and any documents
> submitted in support of the claim are true and accurate to the best

---

[2]  Although not required, in an effort to solicit public input and provide transparency, the Special Master posted draft procedures and frequently asked questions (FAQs) on a website, and invited input from the public from June 17, 2016 through June 29, 2016.  Fund Procedures at 45536.  The Special Master also hosted public conference calls to provide potential claimants, their lawyers, and any other parties with the opportunity to ask questions concerning the Act, application procedures, and FAQs.  *Id.*  The Special Master also met with victims' advocates.  *Id.*

> of the applicant's knowledge, and the applicant agrees that any
> payment made by the Fund is expressly conditioned upon the
> truthfulness and accuracy of the information and documentation
> submitted in support of the claim.

Fund Procedures at 45539, Part XI.  The applicant further acknowledges that false statements or

claims could result in potential criminal penalties:  "The applicant understands that false

statements or claims made in connection with the application may result in fines, imprisonment

and/or any other remedy available by law to the Federal Government, including as provided in

18 U.S.C. 1001."  *Id.*

The Fund Procedures address a claimant's ability to request a hearing if a claim is denied

by the Special Master in whole or in part:

> 1.  Hearings shall be before the Special Master or his designee.  All
> hearings will be closed to the public.
>
> 2.  Based on the circumstances of the claim, the Special Master or
> his designee shall determine the time, location, duration, and
> procedures for the hearing.
>
> 3.  The Special Master shall notify the applicant in writing of his
> final decision affirming or amending the original decision within
> 90 days of the hearing, but need not create or provide any written
> record of the deliberations that resulted in that determination.
> There shall be no further review or appeal of the Special Master's
> determination.  *See* 42 U.S.C. 10609(b)(3)(B).

Fund Procedures at 45539, Part X.

II.    <u>Factual Background</u>

    A.    <u>Mr. Hekmati's Default Judgment Against Iran And Application For
Compensation From The Fund</u>

Following his release from detention by the government of Iran, Mr. Hekmati filed a civil

lawsuit under the FSIA against Iran in the District Court for the District of Columbia.  1st Am.

Compl. ¶¶ 48-51;DA29-64.[3]  The defendant, the Islamic Republic of Iran, did not appear to

defend the case, and Mr. Hekmati moved for a default judgment.  DA31.  In support of his

motion for default judgment, Mr. Hekmati submitted a declaration in which he described his

travel to Iran and detention.  *See* DA32-42.

On September 29, 2017, the court issued a memorandum opinion granting Mr. Hekmati's

motion for default judgment.  On the same day, the court entered a default judgment for Mr.

Hekmati against the Islamic Republic of Iran in the amount of $63,496,358, which amount

included $31,748,179 in compensatory and economic damages.  DA29-64.

On November 3, 2017, Claimant Hekmati provided to the Department of State

documentation required to seek service of the judgment on Iran.  *See* DA74-75.

On December 6, 2017, Mr. Hekmati filed an application with the Fund.  1st Am. Compl.

¶ 64; DA1-164.

B.    The Special Master's Initial Eligibility Determination And Subsequent
      Correspondence Relating To Mr. Hekmati's Claim

On December 28, 2017, the Special Master issued Mr. Hekmati an eligibility letter stating

that the Fund determined his claim to be eligible in the amount of $31,748,179, the amount of

compensatory damages awarded by the district court.  DA165-66.  The Fund continued to accept

applications for the second round of distributions until September 14, 2018.[4]

---

[3] "DA__" refers to defendant's appendix.

[4] The Act required that the Special Master authorize the initial round of payments within
one year of its passage in December 2015 and provides that the second distribution begins "on
January 1 of the second calendar year that begins after the date of the initial payments described
in paragraph (1) if funds are available in the Fund."  34 U.S.C. § 20144(d)(2), (4).  Thus, because
first-round payments took place in 2017, the second round had to be authorized by January 1,
2019.

On December 13, 2018, the Special Master issued Mr. Hekmati an eligibility letter stating that he would be eligible to receive a payment in the amount of $839,100.85.  DA167.

In a letter dated October 24, 2019, the Interim Special Master, Deborah L. Connor, informed Mr. Hekmati that the Department intended to seek reconsideration of the prior eligibility determination and approval of Mr. Hekmati's claim dated December 13, 2018, and had therefore suspended any further action on the payment to Mr. Hekmati from the Fund.  DA188.[5] The letter explained that the matter would be referred for reconsideration to Mr. Kenneth R. Feinberg, who made the original determination on the claim, and that Mr. Feinberg would examine whether the conditions for compensation and payment under the applicable statute and procedures have been satisfied.  *Id.*  The letter notified Mr. Hekmati that the Department was in the process of retaining Mr. Feinberg, on a limited basis, for this purpose, and that once Mr. Feinberg was again in place as Special Master, the Department expected to proceed with reconsideration as expeditiously as possible.  *Id.*  Mr. Hekmati was informed that he would receive notice of any further decision once the review process has been completed and that, if his claim was not approved, he would have an opportunity to request a hearing.  *Id.*

C.    The Special Master's Decision On Reconsideration

On January 15, 2020, the Special Master issued a decision on reconsideration and determined that Mr. Hekmati is not eligible for compensation from the Fund.  DA189-90.  The Special Master noted that he was asked by the Department to reconsider Mr. Hekmati's claim to examine whether the requirements for compensation and payment contained in the Fund's governing statute and procedures have been satisfied.  DA189.  The Special Master also noted

---

[5]   After Mr. Feinberg's term ended, the Department of Justice named Deborah L. Connor, Chief of MLARS, Criminal Division, U.S. Department of Justice, the interim Special Master on March 8, 2019.

that the Department provided him with information that was not before him at the time of the

earlier eligibility and payment determinations. *Id.* The materials provided by the Department to

the Special Master were provided to Mr. Hekmati as attachments to the decision on

reconsideration. DA191-207.

The Special Master noted that "'any payment made by the [USVSST] Fund is expressly

conditioned upon the truthfulness and accuracy of the information and documentation submitted

in support of the claim,'" and that the Fund's procedures and the Application Form require every

claimant to certify, under oath and subject to penalty of perjury, the truth and accuracy of the

application." DA189 (quoting the Fund Procedures at 45539). The Special Master explained his

reconsideration decision:

> Mr. Hekmati certified that his application, including the
> accompanying documents such as the judgment he obtained in
> *Hekmati v. Islamic Republic of Iran*, Case No. 1:16-cv-00875-ESH
> (D.D.C.), were true and accurate to the best of his knowledge. I
> am persuaded that the attached materials demonstrate that Mr.
> Hekmati's application and accompanying documents contained
> material omissions and false statements; in particular, the attached
> materials support the conclusion that the primary purpose of Mr.
> Hekmati's trip to Iran was to sell classified U.S. national security
> information to the government in Iran. This conflicts with Mr.
> Hekmati's declaration filed in connection with the judgment he
> obtained in the U.S. District Court for the District of Columbia that
> the primary purpose of his trip to Iran was to visit family for
> personal reasons. Therefore, I have determined that Mr. Hekmati
> has violated the USVSST Fund's processes and procedures, which
> are required to establish eligibility for payment, and as a result, is
> not eligible for payment from the USVSST Fund.

*Id.* The Special Master concluded that "[b]ased on all of the information Mr. Hekmati submitted

in his application to the USVSST Fund, and the attached materials the Department provided to

me for reconsideration, I have determined that Mr. Hekmati is not eligible for compensation

from the USVSST Fund." *Id.*

The Special Master's decision on reconsideration also notified Mr. Hekmati of his ability

to request a hearing under 34 U.S.C. § 20144(b)(4).  DA190.

    D.    <u>The Hearing Proceedings Before The Special Master</u>

On February 12, 2020, Mr. Hekmati requested a hearing before the Special Master.

DA209.  On March 23, 2020, Mr. Hemati submitted a brief along with exhibits in advance of the

hearing.  DA212-506.

On April 7, 2020, the Special Master conducted a hearing during which Mr. Hekmati

provided sworn testimony.  DA507-610.  An attorney for the Department of Justice attended the

hearing but did not question Mr. Hekmati or present argument.  DA515-16.

On April 24, 2020, the Special Master provided hearing continuation procedures to Mr.

Hekmati and the Department that allowed for further submissions.  DA612.  Pursuant to those

procedures, the Department provided a written response, with exhibits, to Mr. Hekmati's

testimony on June 26, 2020.  DA613-754.  Mr. Hekmati submitted a reply to the Department's

response on July 27, 2020.  DA755-777.

On September 15, 2020, the Special Master requested additional information from Mr.

Hekmati addressing the following five questions:

> 1)  The Claimant obtained an Iranian passport relying upon his
> Iranian citizenship. Did this decision to obtain Iranian citizenship
> violate the terms and conditions of his U.S. security clearance?
>
> 2)  Did the Claimant ever disclose to United States officials at any
> time his intention to travel to Iran as required as a DOD
> contractor?
>
> 3)  Can the Claimant credibly refute the fact that while employed
> as a United States intelligence analyst in Afghanistan – and
> possessing a Top Secret government security clearance – over 90%
> of hundreds of highly classified documents he accessed focused on
> the subject of Iran rather than on his assigned responsibility to
> analyze terrorist threats in Afghanistan? Did the Claimant prepare

- 11 -

> any written reports or oral summaries of his examination of such
> Iranian topics?
>
> 4)  How does the Claimant respond to the Department of Justice
> assertion that four reliable individual confidential sources
> independently maintain that the Claimant traveled to Iran primarily
> for reasons unrelated to a family visit?
>
> 5)  Finally, how does the Claimant respond to the Department of
> Justice assertion that he provided evasive false and inconsistent
> statements to the FBI when interviewed on three separate
> occasions by FBI agents concerning his trip to Iran and the
> circumstances surrounding that trip?

DA780-81.  Mr. Hekmati responded by letter dated November 20, 2020.  DA784-97.

E.     The Special Master's Final Decision

The Special Master issued a Final Decision on December 7, 2020, in which he

determined that Mr. Hekmati is not eligible to receive payment from the Fund and affirmed his

decision on reconsideration denying Mr. Hekmati's application for payment.  DA798-800.  The

Special Master explained that in reaching his decision, he considered Mr. Hekmati's application

and supporting documentation, testimony from Mr. Hekmati and argument from counsel offered

at the April 7, 2020 hearing, and the additional written materials provided by Mr. Hekmati and

the Department of Justice.  DA798-99.

The Special Master found, based upon a preponderance of the evidence, that Mr. Hekmati

is not eligible to receive payments from the Fund because his application contained material

omissions and false statements.  DA799.  The Special Master noted that in his application, Mr.

Hekmati maintained that he traveled to Iran to visit family for personal reasons.  *Id.*  The Special

Master found that "the circumstantial evidence, when viewed in its totality, indicates that this

statement was false, that the Claimant traveled to Iran for primary purposes other than to visit his

family."  *Id.*

The Special Master explained that his determination was based on the cumulative

evidence submitted and explained five bases for his decision:

> 1)  The Claimant obtained an Iranian passport relying upon his
> Iranian citizenship.  But this decision to obtain Iranian citizenship
> violated the terms and conditions of his US security clearance.
> The Claimant had previously renounced such citizenship in order
> to receive the required US security clearance and failed to disclose
> to US authorities, as required, that he had obtained an Iranian
> passport.  Claimant was on notice that he was prohibited from
> maintaining Iranian citizenship while possessing a US security
> clearance.
>
> 2)  The Claimant never disclosed to United States officials at any
> time his intention to travel to Iran as required as a DOD contractor.
>
> 3)  The Claimant is unable to credibly refute the fact that, while
> employed as a United States intelligence analyst in Afghanistan –
> and possessing a Top Secret government security clearance - FBI
> forensic examination of his computer/search access logs reveals
> that over 90% of hundreds of highly classified documents he
> accessed focused on the subject of Iran rather than on his assigned
> responsibility to analyze terrorist threats in Afghanistan.  FBI
> forensic examination corroborates that the Claimant accessed
> highly classified information pertaining to Iranian military, nuclear
> and terrorism topics.  This was accomplished without the
> knowledge or permission of the Claimant's supervisors.  Nor did
> the Claimant prepare any written reports or oral summaries of his
> examination of such Iranian topics.
>
> 4)  In support of its position, the Department of Justice asserts that
> four reliable individual confidential sources independently
> maintain that the Claimant traveled to Iran primarily for reasons
> unrelated to a family visit.  The Department of Justice asserts that
> these four different, independent and reliable sources each arrived
> at this same conclusion, reinforcing each other.
>
> 5)  Finally, the Hearing record details evasive, false and
> inconsistent statements that the Claimant provided the FBI when
> interviewed on three separate occasions by FBI agents concerning
> his trip to Iran and the circumstances surrounding that trip.

DA799-800.

- 13 -

The Special Master found that Mr. Hekmati had attempted to refute the points above, but was "unable to come forward with sufficient evidence to rebut the totality of the evidence." *Id.* The Special Master determined that "each of these separate circumstances – when reviewed cumulatively and in a comprehensive fashion based upon a review of the entire Hearing record – results in my conclusion that the Department has met the required preponderance of the evidence standard in asserting that [Mr. Hekmati's] application was untruthful." *Id.* The Special Master therefore concluded that Mr. Hekmati's "appeal should be denied and that my prior reconsideration decision denying the Claimant's application for payment under the USVSST Fund is affirmed." *Id.*

ARGUMENT

I.      Standards Of Review

        A.      Standard For A Motion To Dismiss For Lack Of Subject Matter Jurisdiction

        The Court of Federal Claims is a court of specific jurisdiction. *See Rick's Mushroom Serv. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Although this Court possesses authority to grant relief against the United States, that authority is capped by the extent to which the United States has waived its sovereign immunity. *See United States v. Testan*, 424 U.S. 392, 399 (1967). In addressing an RCFC 12(b)(1) motion, "determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted). Plaintiffs "bear the burden of establishing the court's jurisdiction over their claims by a preponderance of the evidence." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint

- 14 -

and draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).  In deciding a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), however, the Court may consider evidentiary matters outside the pleadings.  *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

B.    <u>Standard For A Motion To Dismiss For Failure To State A Claim</u>

RCFC 12(b)(6) requires dismissal of a complaint if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted.  *See Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  For purposes of the motion, the Court assumes that all well-plead factual allegations are true and makes reasonable inferences in favor of the non-movant.  *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991).  However, "[l]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness."  *Blaze Constr., Inc. v. United States,* 27 Fed. Cl. 646, 650-651 (1993) (citation omitted).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Kam-Almaz v. United States*, 682 F.3d 1364, 1367-68 (Fed. Cir. 2012) (same).

C.    <u>Standard For A Motion For Summary Judgment</u>

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."  RCFC 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

- 15 -

II.     The Court Lacks Jurisdiction Over Mr. Hekmati's Claims

      A.     The Jurisdiction Of This Court Is Limited

It is well-established that the United States Court of Federal Claims is a court of limited jurisdiction. *Inter-Coastal Xpress, Inc. v. United States,* 296 F.3d 1357, 1365-66 (Fed. Cir. 2002). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief. *United States v. Testan,* 424 U.S. 392, 399 (1976); *United States v. Sherwood,* 312 U.S. 584, 586 (1941). Congressional consent to suit in this Court, thereby waiving the Government's traditional immunity, must be explicit and strictly construed. *United States v. Mitchell,* 445 U.S. 535, 538 (1980); *Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity cannot be implied but must be unequivocally expressed. *Testan,* 424 U.S. at 399; *United States v. King*, 395 U.S. 1, 4 (1969).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. *Testan,* 424 U.S. at 397; *Aetna Casualty & Surety Co. v. United States,* 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Pursuant to the Tucker Act, an action may be maintained in this Court only if it is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a).

This statute does not create any substantive right of recovery against the United States for money damages. *Testan,* 424 U.S. at 398; *Eastport Steamship Corp. v. United States,* 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, the statute merely confers jurisdiction upon the Court whenever the substantive right exists. *Testan,* 424 U.S. at 398; *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir. 1983) (*en banc*). A plaintiff must, therefore, identify and plead an independent contractual relationship, constitutional provision, federal statute, or

executive agency regulation that provides a substantive right to money damages. *See Fisher v. United States,* 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.").

> B.   The Act Expressly Precludes Judicial Review Of The Special Master's Decisions With Regard To Compensation From The Fund And Mr. Hekmati Has Not Otherwise Raised A Claim Within This Court's Jurisdiction

Generally, there is a presumption in favor of judicial review. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967). The presumption, however, is overcome "whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" *Block v. Community Nutrition Inst.*, 467 U.S. 340, 351 (1984) (quoting *Data Processing Serv. v. Camp*, 397 U.S. 150, 157 (1970)). In other words, if there is a "persuasive reason to believe" that Congress purposed to preclude judicial review, then courts will not review the matter. *See Abbott Labs.*, 387 U.S. at 140.

Here, Congress expressly precluded judicial review of the Special Master's decisions with regard to compensation. The Act provides that "[a]ll decisions made by the Special Master with regard to compensation from the Fund shall be," with one exception, "not subject to administrative or judicial review." 34 U.S.C. § 20144(b)(3). The sole exception under section 20144(b) does not permit judicial review, but provides that "a claimant whose claim is denied in whole or in part by the Special Master may request a hearing before the Special Master" and that the Special Master will thereafter "issue a final written decision affirming or amending the original decision." 34 U.S.C. § 20144(b)(4). The Act expressly provides that a final written decision after a hearing before the Special Master is "final and nonreviewable." *Id.* Because Congress specifically precluded judicial review, this Court lacks jurisdiction over Mr. Hekmati's claims. *See United States v. Babcock*, 250 U.S. 328, 330-31 (1919) (holding that the Court of

Claims did not possess jurisdiction to determine whether army personnel could recover for losses of personal property when the statute in question conferred upon the Treasury Department exclusive jurisdiction to consider all claims); *Pueschel v. United States*, 297 F.3d 1371, 1374-76 (Fed. Cir. 2002) (holding that judicial review of an administrative decision by the Secretary of Labor under the Federal Employees Compensation Act was precluded by the statute's clear and unambiguous language and any support to the contrary by the legislative history was ambiguous); *c.f. Schneider v. Feinberg*, 345 F.3d 135, 148–49 (2d Cir. 2003) (noting, regarding the Special Master's determinations of compensation under the Air Transportation and Safety and System Stabilization Act of 2001, that "it appears that Congress has confided each award to the sealed box of a Special Master's mind . . . and has placed the result beyond the reach of review").

Mr. Hekmati cannot evade the Act's bar against judicial review by characterizing his claim as a violation of the Act based on the Special Master's reconsideration of his initial eligibility determination. *See* 1st Am. Compl. ¶ 96.  In assessing jurisdiction, the Court looks to the true nature of plaintiff's claim, not how plaintiff characterizes it. *See Folden v. United States*, 379 F.3d 1344, 1359 n.13 (Fed. Cir. 2004).  Mr. Hekmati's claims plainly represent a challenge to the Special Master's decision as to his eligibility to receive compensation from the Fund and the amount of compensation to which Mr. Hekmati believes he is due.  Allowing judicial review of Mr. Hekmati's claims would contravene the explicit language of the statute.

Likewise, Mr. Hekmati cannot invoke jurisdiction under the Tucker Act by characterizing the Act as "a money-mandating statute, the express purpose and intent of which is to compensate eligible individuals . . . ."  1st Am. Compl. ¶ 89.  Sovereign immunity is not waived – and a statute is not "money mandating" – in every instance where a statute addresses compensation.

*See Testan,* 424 U.S. at 399. Here, the express language of the Act precludes *any* judicial review of the Special Master's decisions regarding compensation. 34 U.S.C. § 20144(b)(3)-(4). Given this unequivocal proscription, Congress clearly did not intend to give unhappy applicants to the Fund a cause of action for money damages in this Court.

In addition, Mr. Hekmati's claim for "correction of applicable records," 1st Am. Compl. ¶¶ 99-107, does not present a claim within this Court's jurisdiction. Under 28 U.S.C. § 1491(a)(2), this court can only correct administrative records in cases where subject matter jurisdiction is otherwise provided by a money-mandating statute. *Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1988); *Robinson v. United States*, 135 Fed. Cl. 556, 559-60 (2017).

Finally, it is well established that this Court does not possess jurisdiction over alleged violations of the Due Process Clauses of the Fifth and Fourteenth Amendments and the doctrine of separation of powers because they do not mandate payment of money by the government. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). In addition, the Tucker Act specifically states that the Court of Federal Claims lacks jurisdiction over claims sounding in tort. 28 U.S.C. § 1491(a)(1). Thus, Mr. Hekmati's allegations of a violation of his due process rights, 1st Am. Compl. ¶¶ 1, 7, a violation of the separation of powers doctrine, *id.* ¶ 84, and alleged retaliatory acts in connection with the Special Master's reconsideration of his initial eligibility determination, *id.* ¶¶ 87, 97, 105, do not raise claims within this Court's jurisdiction.

The record demonstrates that such claims are unfounded, in any event. *First*, even assuming, *arguendo*, that Mr. Hekmati could establish that he had a protected property interest in compensation from the Fund, he was afforded all the process that was due. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1328 (Fed. Cir. 2013) ("The indispensable ingredients of due process are notice and an opportunity to be heard by a disinterested decision-maker."). The Act

provides that a claimant whose claim is denied in whole or in part by the Special Master may request a hearing before the Special Master. 34 U.S.C. § 20144(b)(3). Not only did Mr. Hekmati receive a hearing before the Special Master, during which he presented oral testimony and his counsel presented argument, DA507-610, the Special Master also afforded Mr. Hekmati the opportunity to provide three separate written submissions in support of his claim. DA212-506, 755-77, 784-97. Indeed, before issuing his final decision, the Special Master provided Mr. Hekmati with five questions directed to his specific concerns and gave Mr. Hekmati the opportunity to respond. DA780-81.

*Second*, contrary to Mr. Hekmati's suggestions, 1st Am. Compl. ¶ 84, the separation of powers doctrine is not implicated by the Special Master's determination that Mr. Hekmati is not eligible to receive payments from the Fund because his application contained material omissions and false statements. Mr. Hekmati apparently contends that the Special Master could not assess the truthfulness of statements made by Mr. Hekmati in support of his motion for default judgment because the district court granted his motion. *See id.* The Special Master was not bound to accept as true statements made by Mr. Hekmati in support of an uncontested motion, particularly when the Special Master was presented with new information that was not before him at the time of his initial eligibility determination (and that was not before the district court when it granted Mr. Hekmati's uncontested motion).

*Third*, there is no basis whatsoever for Mr. Hekmati's assertion that the Department of Justice requested reconsideration of the Special Master's initial eligibility determination as a "retaliatory act." *See* 1st Am. Compl. ¶ 87. As the record demonstrates, the Department of Justice asked the Special Master to reconsider his initial eligibility determination based on serious concerns that Mr. Hekmati's application and accompanying documents contained

material omissions and false statements regarding the primary purpose of his trip to Iran.
DA613-754.  Indeed, after considering all of the evidence, including oral testimony from Mr.
Hekmati, the Special Master found that, based on the preponderance of the evidence, Mr.
Hekmati's application contained material omissions and false statements regarding his primary
purpose for traveling to Iran.  DA798-800.  The Special Master explained that his conclusion
was based on the totality of the evidence and was supported by Mr. Hekmati's inability to refute
evidence from the Department of Justice on several key issues.  DA799-800.  In his amended
complaint, Mr. Hekmati takes issue with the evidence in the record on *one* of these issues – the
Department's assertion that four reliable individual confidential sources independently maintain
that Mr. Hekmati traveled to Iran primarily for reasons unrelated to a family visit – which Mr.
Hekmati dismisses as "anonymous hearsay allegations."  *See* 1st Am. Compl. ¶ 1.  The
Department's assertion is supported by a declaration, signed under penalty of perjury pursuant to
28 U.S.C. § 1746, by the Federal Bureau of Investigation's (FBI) lead agent on the espionage
investigation of Mr. Hekmati.  DA631-32.  Moreover, Mr. Hekmati ignores the evidence on
other issues in the record that the Special Master relied on in support of his decision including
(1) unrefuted evidence that Mr. Hekmati obtained an Iranian passport relying upon his Iranian
citizenship, which violated the terms and conditions of his security clearance; (2) unrefuted
evidence that Mr. Hekmati never disclosed to United States officials at any time his intention to
travel to Iran as required as a DOD contractor; (3) unrefuted evidence from the FBI's forensic
examination of his computer search/access logs revealing that over 90 percent of hundreds of
highly classified documents accessed by Mr. Hekmati were focused on the subject of Iran, rather
than on his assigned responsibility to analyze terrorist threats in Afghanistan; and (4) evidence
that Mr. Hekmati provided evasive, false, and inconsistent statements to the FBI when

interviewed on three separate occasions by FBI agents concerning his trip to Iran and the

circumstances surrounding that trip.  DA631-754, 798-800.  Mr. Hekmati was unable refute the

evidence relied on by the Special Master, despite several opportunities to do so.

III.    Assuming Jurisdiction, The Complaint Fails To State A Claim Of Statutory Violation
        Upon Which Relief May Be Granted

        Even if this Court had subject matter jurisdiction, Mr. Hekmati's amended complaint

should be dismissed because his statutory violation claim is based on a misreading of the Act.

Specifically, Mr. Hekmati contends that because Congress provided that the Special Master's

decisions on compensation would not be subject to further "administrative or judicial review"

Congress precluded the Special Master from reconsidering his own initial eligibility

determination, 1st Am. Compl. ¶ 83, even where necessary to protect the integrity of those

proceedings from fraud.  Mr. Hekmati is incorrect.

        The Federal Circuit has held that "[t]he power to reconsider is inherent in the power to

decide."  *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008)

(recognizing that "the courts have uniformly concluded that administrative agencies possess

inherent authority to reconsider their decisions, subject to certain limitations, regardless of

whether they possess explicit statutory authority to do so" and collecting authority).  Thus, the

Federal Circuit held in *Tokyo* that "[t]he prohibition against doing something *not* authorized by

statute is altogether different from the power to reconsider something that is authorized by

statute."  *Id.* (court's emphasis).  Moreover, the Federal Circuit held that "[a]n agency's power to

reconsider is even more fundamental when . . . it is exercised to protect the integrity of its own

proceedings from fraud."  *Id.* at 1360-61 (citing *Alberta Gas Chemicals, Ltd. v. Celanese Corp.*,

650 F.2d 9, 13 (2d Cir. 1981)); *Alberta Gas*, 650 F.2d at 13 ("It is hard to imagine a clearer case

for exercising this inherent power than when a fraud has been perpetrated on the tribunal in its initial proceeding.").

An agency's inherent authority to reconsider its decisions is subject to certain limitations. An agency is without power to reconsider where "a statute forbids the exercise of such power." *Id.* "The agency must also give notice to the parties of its intent to reconsider, and such reconsideration must occur within a reasonable time." *Id.* "Finally, an agency may not reconsider in a manner that would be arbitrary, capricious, or an abuse of discretion." *Id.*

These limitations on the exercise of inherent power are not at issue in this case. Mr. Hekmati's principal contention is that the Act forbids reconsideration because it provides that the Special Master's decisions on compensation are not subject to administrative or judicial review. *See* 1st Am. Compl. ¶ 83. As an initial matter, this contention fails to recognize that reconsideration of a tribunal's own proceedings is not a "review" of the initial proceeding, but rather "a reopening and reconsideration of its previously-conducted" eligibility determination. *See Tokyo*, 529 F.3d at 1360. Thus, the Act did not preclude the Special Master from exercising his inherent authority to reconsider his own initial determinations but precluded something altogether different –an additional layer of review of the Special Master's decisions either within the agency or by the courts. 34 U.S.C. § 20144(b)(3)-(4). This is confirmed by the language of the statute, which expressly carves out an exception to the preclusion of administrative review when that review is conducted by the Special Master herself. 34 U.S.C. § 20144(b)(3)(B). In the following subsection, 20144(b)(4), Congress provides the timeframe in which a claimant may seek reconsideration of an initial denial by the Special Master and the process to be followed. By addressing the process under which a claimant may seek reconsideration, Congress did not

forbid the Special Master from exercising her inherent authority to reconsider.  *See Tokyo*, 529

F.3d at 1360.

Thus, read within the context of a decision-maker's inherent authority to reconsider its

own decisions, it is clear that in subsection 20144(b)(3), Congress was prohibiting layered

review of a Special Master's decision.  Accepting Mr. Hekmati's misconstruction of the statute

would mean that the Special Master would be powerless to correct *any* error *sua sponte*,

including correcting a decision that misstated the total amount of compensation for which the

claimant was eligible or a *sua sponte* reconsideration where the Special Master denied a

claimant's claim in error, but the claimant did not seek reconsideration.  Under Mr. Hekmati's

misreading of the statute, the Special Master would also be left powerless to reopen and

reconsider an initial eligibility determination even when faced with evidence that the prior

proceeding was tainted by fraud – as was the case here.  Congress's intention to preclude the

Special Master's decisions from *further* review in no way indicates that Congress intended to

shield fraudulently-obtained decisions from the Special Master's inherent authority to reconsider

her decisions, or otherwise preclude the Special Master from *sua sponte* correcting her own

errors.

The remaining limitations are also not at issue here.  The Department of Justice provided

notice to Mr. Hekmati of its intent to reconsider and reconsideration occurred within a

reasonable time.  The timing of the reconsideration is reasonable here given that (1) the evidence

of Mr. Hekmati's false statements in support of his application was not before the Special Master

at the time of his initial determination; (2) the Department's need to re-retain Mr. Feinberg as the

Special Master on a limited basis so that reconsideration would be performed by the same

decisionmaker as the initial decision, as a procedural safeguard for Mr. Hekmati, DA188; and

(3) the Department's need to declassify certain evidence before presenting it to the Special

Master in support of the request for reconsideration, *see, e.g.*, DA191-207.

   Finally, the Special Master's reconsideration was not performed in a manner that was

arbitrary, capricious, or an abuse of discretion.  As discussed, following the Special Master's

decision on reconsideration, Mr. Hekmati was afforded a hearing before the Special Master in

which he presented oral testimony and his counsel presented argument.  DA507-610.  Mr.

Hekmati was also able to provide multiple written submissions to the Special Master, including a

submission addressing the Special Master's specific questions.  DA212-506, 755-77, 784-97.

Although not required by the Act, the Special Master's final decision also provided a thorough

explanation of the reasons for his decision.  *See* 34 U.S.C. § 20144(b)(4) (requiring only that the

Special Master provide a "final written decision affirming or amending the original decision").

Thus, the Special Master's reconsideration was performed in a rational manner that afforded Mr.

Hekmati ample due process.

IV. <u>In The Alternative, The Court Should Grant Summary Judgment To The Government</u>

   For the same reasons that Mr. Hekmati's statutory violation claim should be dismissed

under RCFC 12(b)(6), summary judgment is equally warranted.  There are no disputed, material

facts relevant to the Court's consideration of the claim, and as established above, the statutory

violation claim fails on the law.  *See* Section III above.

<u>CONCLUSION</u>

   For these reasons, we respectfully request that the Court grant this motion and dismiss the

first amended complaint or grant summary judgment to the Government.

            Respectfully submitted,

            BRIAN M. BOYNTON
            Acting Assistant Attorney General

- 25 -

ROBERT E. KIRSCHMAN, JR.
Director

s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

s/ Shari A. Rose
SHARI A. ROSE
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-1265
Facsimile: (202) 514-8640
E-mail: Shari.Rose@usdoj.gov

March 3, 2021                    *Attorneys for Defendant*